UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL E.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

19-CV-1344-LJV
DECISION & ORDER

On October 2, 2019, the plaintiff, Michael E. ("Michael"), brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On May 20, 2020, Michael moved for judgment on the pleadings, Docket Item 16; on August 13, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19; and on September 3, 2020, Michael replied, Docket Item 20.

For the reasons stated below, this Court grants Michael's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

**STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ("ALJ")] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

**DISCUSSION**

Michael argues that the ALJ erred in determining his residual functional capacity ("RFC") by relying on her own lay judgment and not the judgment of a medical

professional. Docket Item 16-1. This Court agrees that the ALJ erred and, because that error was to Michael's prejudice, remands the matter to the Commissioner.

## I. TREATING PHYSICIAN RULE

When determining a claimant's RFC, an ALJ must "weigh and evaluate" every medical opinion received. *Wider v. Colvin*, 245 F. Supp. 3d 381, 388 (E.D.N.Y. 2017) (citing 20 C.F.R. § 416.927(c)). That includes evidence from outside the disability period if that evidence relates to the relevant time frame. *See, e.g.*, *Hartfiel v. Apfel*, 192 F. Supp. 2d 41, 44 (W.D.N.Y 2001) (considering treating physician's diagnoses of disability that postdated insured status). An ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. §§ 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

If an ALJ gives less-than-controlling weight to a treating source's opinion, she must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations

and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

The ALJ here discussed—but did not assign any specific weight to—the opinions of Michael's treating physicians, Eugene J. Gosy, M.D., and Bernard Beaupin, M.D. *See* Docket Item 10 at 21-22. Therefore, this Court does not know whether the ALJ accepted their opinions; rejected part or all of their opinions; discounted part or all of their opinions; or did something else entirely. For that reason, the ALJ erred. *See Wider*, 245 F. Supp. 3d at 388 ("Under 20 C.F.R. § 416.927 ALJs are required to weigh and evaluate 'every medical opinion.'"). Moreover, if the ALJ gave anything other than controlling weight to their opinions, she was required to "explicitly" discuss the *Burgess* factors before doing so and the failure to do that was an error as well. *See Greek*, 802 F.3d at 375.

Indeed, it appears that is exactly what happened here. The ALJ said that "the persuasive value and relevance of [Dr. Gosy's and Dr. Beaupin's] opinions . . . must be carefully assessed because" those opinions were rendered in the context of Michael's workers compensation claim. Docket Item 10 at 22. But despite purporting to "consider[ Dr. Gosy's and Dr. Beaupin's opinions] for clinical and diagnostic findings as well as any specific functional limitations," *id.*, the ALJ also said that "the record does not contain *any* non-conclusory opinions, supported by clinical or laboratory evidence, from treating . . . physicians indicating that the claimant was not able to work," *id.* at 21

(emphasis added). And the ALJ formulated an RFC that clearly was not grounded in the treating physicians' opinions.

In fact, the RFC conflicts with Dr. Gosy's and Dr. Beaupin's findings in significant ways. For example, the ALJ found that Michael had the RFC to "stand or walk for one hour[] and sit for seven hours per eight-hour workday[, and h]e can alternate between sitting and standing once every hour for 5 minutes without increasing time off task." *Id.* at 19. But both Dr. Gosy and Dr. Beaupin found that sitting for prolonged periods exacerbated Michael's pain. *See* Docket Item 10-1 at 155, 255. Dr. Beaupin, in particular, opined only once that Michael could sit for as much as an hour—"40-60 minutes," *id.* at 535; every other opinion limited Michael to sitting for much shorter periods of time, *see, e.g.*, *id.* at 556, 576, 581, 586 (finding that Michael can sit for only 10-20 minutes); *id.* at 452 (finding that Michael can sit for 15 minutes); *id.* at 550 (finding that Michael can sit for 5-10 minutes); *id.* at 575 (finding that Michael can sit for 30 minutes). Michael also testified that he could "only sit for 10 minutes at a time" and that "[m]ost of the day [he] lay down on the couch." Docket Item 10 at 47.

Moreover, Michael testified that while switching positions helped him, it was easier for him to walk around as opposed to "standing in place[, which] kill[ed] [him]." *See* Docket Item 10 at 84; *see also* Docket Item 10-1 at 255 (Dr Beaupin: finding that Michael's pain "is made better with . . . switching positions from sitting and walking"). The RFC, however, would allow Michael only to "alternate *between sitting and standing* once every hour for 5 minutes without increasing time off task." Docket Item 10 at 19-20 (emphasis added). If Michael needs to walk around when he changes position, the ability to alternate between sitting and standing "without increasing time off task" may

well not suffice. *See* Docket Item 10 at 62 (Vocational Expert's testifying that an individual who needed to walk around while switching positions may not be employable because "if they have to get up and walk around . . . they're not at their workstation and [they are] off task").

The RFC also would require Michael to "occasional[ly]" lift 15 pounds and "frequent[ly] lift[] or carry[]" 10 pounds. Docket Item 10 at 19. Dr. Gosy and Dr. Beaupin, however, found that Michael was limited in his ability to lift. *See* Docket Item 12 at 613 (Dr. Gosy: finding that Michael's pain "re-exacerbates with . . . lifting"); Docket Item 10-1 at 255, 536 (Dr. Beaupin: finding that Michael's "pain is made worse with . . . lifting"). Although Dr. Beaupin at times opined that Michael could lift between "10-20" pounds, *see, e.g.*, Docket Item 10-1 at 457, 536, 541, 551, 561, he also frequently found that Michael could lift only less than that, *see, e.g.*, *id.* at 540, 545, 555, 560, 565, 570 (finding that Michael can lift only "5-10" pounds); *see, e.g.*, *id.* at 550 (finding that Michael can lift "[u]p to 5" pounds); *see, e.g.*, *id.* at 452, 575, 580 (finding that Michael can lift "around a gallon of milk without pain"). At the very least, these medical opinions call into question the findings of the RFC.[3]

The ALJ did not attempt to reconcile any of this. So it appears that the ALJ rejected at least those portions of Dr. Gosy's and Dr. Beaupin's opinions that conflict with the RFC. And she erred when she did so without "explicitly" considering the *Burgess* factors.

[3] And this also evidences a gap in the medical evidence that the ALJ was obligated to fill. *See infra* at II.

For example, although the ALJ mentioned that Dr. Gosy and Dr. Beaupin were Michael's "treating physicians," Docket Item 10 at 21, she never acknowledged that they both had treated Michael consistently for some time: Dr. Gosy since July 2006, *see* Docket Item 12 at 472, and Dr. Beaupin since June 2016, *see* Docket Item 10-1 at 255. The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. Gosy's and Dr. Beaupin's] treatment." *See Greek*, 802 F.3d at 375. She also did not discuss Dr. Gosy's training as a pain treatment and neurology specialist or his role in managing Michael's extensive medication list, nor did she address Dr. Beaupin's specialization in ailments involving the spine. In other words, the ALJ failed to "explicitly" consider "whether [each] physician is a specialist." *See id.* And she did not "explicitly" address "the amount of medical evidence supporting the opinion[s]" and only obliquely addressed "the consistency of the opinion[s] with the remaining medical evidence." *See id.*

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e*., whether the record otherwise provides 'good reasons' for [discounting Dr. Gosy's and Dr. Beaupin's] opinion[s]." *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

First, Dr. Gosy's and Dr. Beaupin's opinions were consistent with each other—strong evidence of their validity. Both found that Michael was limited in his ability to sit,

stand, walk, bend, and lift and that he needed to rest throughout the day. *See, e.g.*, Docket Item 10-1 at 90; Docket Item 10-2 at 45 (Dr. Gosy: finding that standing, sitting, and walking aggravated Michael's pain and that he rested frequently throughout the day); Docket Item 12 at 613 (Dr. Gosy: "[T]he pain still re-exacerbates [sic] with bending and lifting."); Docket Item 10-1 at 255, 536 (Dr. Beaupin: "The pain is made worse with bending, lifting, pulling, standing[,] and sitting for too long. The pain is made better with medications, lying down as well as switching positions from sitting and walking."). Both their opinions also were supported by their treatment notes, which found tenderness and a limited range of motion in Michael's spine. *See, e.g.*, Docket Item 10-1 at 260 (Dr. Beaupin: "Lumbar spine range of motion is limited by 50% in all ranges . . . . There is pain with palpation over the lumbar paraspinal muscles [with] palpable muscle spasms and trigger points throughout the lumbar paraspinal muscles."); *id.* at 57 (Dr. Gosy: "[Michael] d[id] show tenderness at L5 on the right" and his spinal active range of motion was "50% of normal with pain" in the left lateral flexion, right lateral flexion, and left rotation). And they both ultimately opined that Michael was permanently disabled. *See, e.g.*, Docket Item 10-1 at 225 (Dr. Gosy: finding Michael 50% permanently disabled); *id.* at 256 (Dr. Beaupin: finding Michael 60% permanently disabled).

Additionally, Dr. Gosy's and Dr. Beaupin's opinions were supported by other providers' treatment notes. For example, the notes of Michael's physical therapist, Anthony Ricotta, Jr., PT, DPT, also found that Michael had limited lumbar range of motion and that his back pain was worsened by increased activity, such as lifting and standing. *See, e.g.*, Docket Item 12 at 459. And even Michael's psychiatrist, Michael P. Hallett, M.D., noted Michael's "[c]hronic back pain." *See* Docket Item 10-1 at 17.

The Commissioner argues that because Dr. Gosy and Dr. Beaupin opined on the ultimate issue—that Michael "was disabled"—their opinions were "entitled to no deference," and the ALJ therefore did not err in discounting them. *See* Docket Item 19-1 at 14-15. The premise underlying the Commissioner's argument is correct: to the extent that Dr. Gosy and Dr. Beaupin found Michael "disabled," their assessments were not true "medical opinions" entitled to deference. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Opinions on some issues, such as [an opinion that a claimant is 'disabled' or 'unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner." *Id.* § 404.1527(d)(1).

But the fact that a physician's opinion includes a conclusion about the ultimate issue does not give the ALJ license to discount the entire opinion. In such a circumstance, the ALJ still must analyze what is behind the conclusion on the ultimate issue or, if necessary, recontact the physician to request a translation of the opinion into language that fits the Social Security context. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added). But contrary to what the ALJ said about "consider[ing Dr. Gosy's and Dr. Beaupin's opinions] for clinical and diagnostic findings as well as any specific functional

limitations," *see* Docket Item 10 at 22, the ALJ apparently did neither of these things here.

Indeed, the ALJ not only failed to address the medical findings behind the treating physician's conclusions, she did not even say to what degree she discounted them. When an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported [her] RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc. Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018). And this Court has many unanswered questions here.

Finally, remand is appropriate because the ALJ's error prejudiced Michael. Both Dr. Gosy's and Dr. Beaupin's opinions call into question whether Michael can perform the level of work the RFC contemplates. *See supra*. And that is enough to require remand. *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ"). For all those reasons, the ALJ's failure to assign weight to the treating physicians' opinions, and her failure to apply the *Burgess* factors before apparently discounting at least parts of those opinions, are both errors requiring remand.

## II. DUTY TO DEVELOP THE RECORD

The ALJ might have avoided error here by soliciting a medical opinion, also known as a medical source statement, from a treating physician. In fact, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d

41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)). And this obligation is not excused by the lapse of the relevant disability period.[4] *See, e.g.*, *Perez*, 77 F.3d at 48 ("A treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques.").

The Commissioner's own regulations reflect this duty, explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[5]) (additional citation

---

[4] Although Michael's insured status ended on September 30, 2014, evidence rendered after that date still must be considered by the ALJ if it relates to the relevant time frame. *See Hartfiel*, 192 F. Supp. 2d at 44.

[5] This section was amended, effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Michael applied for disability benefits starting August 2012—that is,

omitted). The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Id.* (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted). Although "remand is not always required when an ALJ fails in his duty to request [medical source] opinions [from treating sources], particularly where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," remand is appropriate where the records are not otherwise complete. *See id.* at 34. That is the case here.

Having discounted or rejected Dr. Gosy's and Dr. Beaupin's opinions, the ALJ was left with no other medical opinion from which to construct Michael's RFC. In fact, the ALJ said as much. *See* Docket Item 10 at 21 ("the record does not contain any non-conclusory opinions, supported by clinical or laboratory evidence"). As a result, the ALJ's RFC determination ultimately was based not on a competent medical opinion but on her own lay judgment—underscoring the significance of her failure to solicit a medical source statement. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted

---

before the date the changes became effective—his claim is governed by the prior regulation. *See id.* at 5844-46.

medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)). And when the record provides no support for the specific amount of time that a claimant can sit or stand without relief, a specific finding toward that end is not supported by substantial evidence. *See, e.g.*, *Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) ("[T]he record does not support the ALJ's conclusion that she needs to briefly switch between sitting and standing only every thirty minutes. . . . Moreover, there is evidence in the record indicating that Tomicki needs to change positions every few minutes, not every thirty minutes.").

The ALJ found that Michael had the RFC to perform

> sedentary work as defined in 20 C.F.R. [§] 404.1567(a)[6] except occasional [sic] lifting fifteen pounds and frequent [sic] lifting or carrying ten pounds. [Michael] can stand or walk for one hour[] and sit for seven hours per eight-hour workday. He can alternate between sitting and standing once every hour for 5 minutes without increasing time off task. [He can o]ccasional[ly] push[] and pull[; o]ccasional[ly] climb[] ramps and stairs[; o]ccasional[ly] balance[e] on level surfaces[; and o]ccasional[ly] stoop[] (i.e. bend[] at the waist)[. He can] never kneel[], crouch[] (i.e. bend[] at the knees) and crawl[]. [He c]an never tolerate exposure to unprotected heights and moving machinery or moving mechanical parts. [He i]s able to understand, carry out, and remember simple, routine[,] and repetitive tasks[,] defined as work that requires doing the same tasks everyday [sic] with little variation in location, hours[,] or tasks. [He can w]ork in a low stress environment (meaning one with no supervisory responsibilities; no independent decision-making required except with respect to simple, routine, repetitive decisions; and with few, if any, work place changes in work routines, processes[,] or settings). [And he can perform w]ork that involves frequent contact and interaction with supervisors and co-workers and occasional contact with the public.

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Docket Item 10 at 19-20.

Many of these limitations are very specific, but no provider opined as to any of them. In fact, Dr. Gosy and Dr. Beaupin opined that Michael cannot do some of these things. *See supra*. The ALJ thus necessarily relied on her own lay judgment to evaluate the medical records and formulate the RFC. It is otherwise "unclear to the Court how the ALJ, who is not a medical professional, came up with this highly specific RFC determination." *See Perkins v. Berryhill*, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018) (citation omitted); *see also Tomicki*, 2018 WL 703118, at *4 ("The ALJ did not cite any evidence to support this highly-specific sit-stand option, nor did the Commissioner identify any such evidence in [his] motion papers, making it unclear to the Court how the ALJ arrived at this particular finding.").

In an effort to suggest otherwise, the Commissioner argues that the ALJ's "RFC finding [was] based on the record *as a whole*" and did not need to "perfectly correspond with any of the opinions of medical sources." Docket Item 19-1 at 17 (emphasis in original) (citation omitted). But that argument misses the mark. If an ALJ includes a "highly-specific" limitation in the claimant's RFC, that limitation cannot come from whole cloth. *Tomicki*, 2018 WL 703118, at *5. In other words, the ALJ cannot arrive at specific limitations that do not appear anywhere in the medical record. *See Balsamo*, 142 F.3d at 81 ("[I]t is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). Without "some explanation" from the ALJ "as to the tether between [the] RFC and the non-stale medical opinions or statements from [the] plaintiff, the RFC [is] based upon her lay analysis of [the] plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, 2018 WL 5993366, at

*3 (W.D.N.Y. Nov. 15, 2018). The ALJ's failure to ground the RFC in a medical opinion therefore is another, independent error requiring remand.

**CONCLUSION**

In sum, even if the ALJ did not violate the treating physician rule in failing to assign weight to but implicitly discounting Dr. Gosy's and Dr. Beaupin's opinions, she still erred: there was a gap in the record, and the ALJ was obligated to fill that gap before rejecting Michael's disability application. More specifically, the ALJ was required to make an effort to obtain a medical source statement from a treating source familiar with Michael's functioning during the relevant time. Because the ALJ erred, the Court remands the matter so that the ALJ may develop the record and re-evaluate Michael's application.[7]

The Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Michael's motion for judgment on the pleadings, Docket Item 16, is GRANTED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

[7] The Court "will not reach the remaining issues raised by [Michael] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015).

SO ORDERED.

Dated: March 22, 2021
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE